a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| VILMANTAS DILYS, Petitioner | CIVIL DOCKET NO. 1:20-CV-565-P |
| VERSUS | JUDGE DRELL |
| PAT BOOK, *ET. AL.*, Respondents | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a "Petition for Writ of Habeas Corpus and Complaint for Emergency Injunctive Relief" (ECF No. 1) filed by Petitioner Vilmantas Dilys ("Dilys"). Dilys is a detainee in the custody of the Bureau of Immigration and Customs Enforcement ("ICE"), detained at Catahoula Correctional Center ("CCC") in Harrisonburg, Louisiana.

Because Dilys cannot establish entitlement to emergency injunctive relief, his request for a preliminary injunction should be DENIED.

I.  **Background**

Dilys is a native and citizen of Lithuania. ECF. No. 1 at 1. Dilys was admitted to the United States as a non-immigrant visitor on October 15, 2017, with authorization to stay not more than 90 days. ECF No. 11-2 at 2. Dilys remained in the United States beyond the time authorized. He has been detained in ICE custody since February 13, 2020. ECF No. 1 at 4.

Dilys's request for habeas and injunctive relief are both premised on the claims that he is being unlawfully detained by ICE; he is being subject to unsafe and healthy

conditions; and he is not likely to be removed in the reasonably foreseeable future. ECF No. 1 at 4. Dilys challenges the lawfulness of his continued detention under the Fifth Amendment due to the "unhealthy, unsafe, and hazardous conditions" which "place him at substantial risk during his confinement given his history as a smoker." ECF No. 1 at 9, 13. According to Dilys, he is a smoker and has smoked for 16 years. ECF No. 1-3 at 2.

Dilys alleges that Respondents have failed to properly isolate and contain COVID-19 within CCC; continue to accept new detainees; have no policy to test incoming detainees; do not mandate or provide adequate medical screenings for all detainees; and, have failed to institute policies that would properly protect him from contracting COVID-19. ECF No. 1 at 13.

Respondents maintain that CCC has provided education to detainees; provided two masks to all detainees and masks gloves or face shields to staff; provided soap to all detainees; tripled its cleaning supplies and increased cleaning frequency; reduced capacity to less than 75%; and limited or suspended visitation. ECF No. 11 at 12-13. Detainees who present symptoms are placed in isolation and tested. ECF No. 11 at 13. New detainee-intakes are "cohorted" with others and kept separate from all other detainees for 14 days. ECF No. 11 at 14.

The undersigned set an expedited briefing schedule and an evidentiary hearing (hereinafter, the "Hearing"). ECF Nos. 4, 10. Following the Hearing, the Government submitted a supplemental response and exhibit indicating that CCC had 36

confirmed COVID-19 cases and one suspected case as of May 21, 2020. ECF Nos. 13, 13-1.

Dilys's motion for injunctive relief (ECF No. 1) is ripe for disposition.

II. Law and Analysis

    A. The Court has jurisdiction under § 2241 because Dilys challenges the "fact and duration" of his detention, not his "conditions of confinement."

Respondents argue that the Court lacks jurisdiction to consider Dilys's claims under § 2241. This argument is based upon the distinction between "conditions of confinement" claims ("conditions claims") and "fact or duration of confinement" claims ("fact claims"). The parties do not dispute that a petitioner may, and should, assert fact claims under § 2241. *See Poree v. Collins*, 866 F.3d 235, 243 (5th Cir. 2017). But the parties dispute which type of claim Dilys asserts, and which "procedural vehicle" is appropriate for conditions claims.

Because the Court finds that Dilys asserts fact claims, not conditions claims, the question regarding the correct procedural vehicle for conditions claims is not addressed. *See Dada v. Witte*, 1:20-CV-00458, 2020 WL 2614616, at *1 (W.D. La. May 22, 2020) (citing *Vazquez Barrera v. Wolf*, 2020 WL 1904497, at *4 (S.D. Tex. Apr. 17, 2020); *Bent v. Barr*, 2020 WL 1812850 (N.D. Cal. Apr. 9, 2020); *Juan E.M. v. Decker*, 2020 WL 2214586 (D.N.J. May 7, 2020); *Malam v. Adducci*, 2020 WL 1672662 (E.D. Mich. Apr. 6, 2020); *Basank v. Decker*, 2020 WL 1481503 (S.D.N.Y Mar. 26, 2020); *Thakker v. Doll*, 2020 WL 2025384 (M.D. Penn. Apr. 27, 2020)). Since Dilys challenges the fact of his confinement, § 2241 applies.

    B. Preliminary Injunction

3

Dilys seeks a preliminary injunction, and ultimately habeas relief, ordering his release from custody. For a preliminary injunction to be granted, a Petitioner must show: (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted; (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin; and (4) that granting the preliminary injunction will not disserve the public interest. *See Bhatia v. Warden*, 1:16-CV-1125, 2017 WL 1026054, at *1 (W.D. La. Jan. 24, 2017), *report and recommendation adopted*, 2017 WL 1017634 (W.D. La. Mar. 15, 2017) (citing *Planned Parenthood of Houston & Southeast Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005)).

A preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries a burden of persuasion." *Black Fire Fighters Ass'n of Dallas v. City of Dallas, Tex.*, 905 F.2d 63, 65 (5th Cir. 1990). "The denial of a preliminary injunction will be upheld where the movant has failed sufficiently to establish any one of the four criteria." *Black Fire Fighters Ass'n*, 905 F.2d at 65.

1. <u>Dilys is unlikely to succeed on the merits.</u>

Dilys is a civil detainee. As a result, his detention must remain "nonpunitive in purpose and effect." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Civil immigration detainees are specifically entitled to the protections of the Fifth Amendment to the United States Constitution. Its Due Process Clause, in relevant part, forbids the government to "depriv[e]" any "person . . . of . . . liberty . . . without

4

due process of law." Civil detention thus implicates the Due Process Clause: "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See id.* at 693.

The Supreme Court has long held that civil detention must be justified: "[G]overnment detention violates that Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections, or, in certain special and 'narrow' nonpunitive 'circumstances,' where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (internal citations and quotations omitted). Civil detention becomes unconstitutional when "punitive" in nature, meaning "not [or no longer] reasonably related to a legitimate, nonpunitive governmental objective." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997).

Dilys may succeed on his substantive due process claim by establishing that his detention does not reasonably relate to a legitimate governmental purpose. He may make this showing, for example, by proving that, due to his age, immune deficiencies, or other comorbidities, he faces an elevated risk of contracting COVID-19 or suffering serious illness from it; that his particular circumstances also heighten the risk; and that preventive measures are difficult or impossible, leaving him unduly exposed to contracting the virus. *See Vazquez Barrera*, 2020 WL 1904497, at *5

5

("Here, the Court finds that detention of Plaintiffs, who are at high risk of serious illness or death if they contract COVID-19, in MPC, where social distancing and proper hygiene are impossible, does not reasonably relate to a legitimate governmental purpose.").

The Court recognizes the risk to all prisoners and detainees posed by COVID-19. But a petitioner's claims must be distinct in some respect. *See Martinez Franco v. Jennings*, No. 20-CV-02474-CRB, 2020 WL 1976423, at *3 (N.D. Cal. Apr. 24, 2020) ("Franco does not identify, and the Court has not seen, a case finding that increased likelihood of contracting the virus rendered unconstitutional the detention of a person without underlying medical conditions or some other vulnerability."). The Fifth Circuit has explained that "[t]he 'incidence of diseases or infections, standing alone,' do not 'imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks.'" *Valentine v. Collier*, No. 20-20207, 2020 WL 1934431, at *3 (5th Cir. Apr. 22, 2020) (quoting *Shepherd v. Dallas Cty.*, 591 F.3d 445, 454 (5th Cir. 2009)). This Court has already concluded the same: "[P]risoners are not entitled to release or transfer based solely on generalized COVID-19 fears and speculation." *Riggs v. Louisiana*, No. CV 3:20- 0495, 2020 WL 1939168, at *2 (W.D. La. Apr. 22, 2020).[1] Otherwise, the claims of any prisoner or detainee would be

---

[1] And so have many others. *See, e.g., United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020) ("Defendant cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification."); *Saillant v. Hoover, et al.*, No. 1:20-CV-00609, 2020 WL 1891854, at *5 (M.D. Pa. Apr. 16, 2020) (denying habeas relief in part because the petitioner sought habeas corpus relief merely because he was "detained and subjected to a generalized risk of contracting COVID-19").

6

equally meritorious – or equally meritless – notwithstanding their individual situations. That result would be untenable.

To separate meritorious claims from generalized risk, some courts have focused upon underlying detainees' medical conditions, detainees' criminal histories or tendency toward violence, and the detention facility's response to the pandemic. *See Vazquez Barrera*, 2020 WL 1904497, at *6. Other courts have created non-exhaustive lists of factors that may be considered in determining whether to grant habeas relief based on COVID-19 concerns. *See Saillant*, 2020 WL 1891854, at *4; *Vazquez Barrera*, 2020 WL 1904497, at *6. This Court recently compiled a number of factors in determining whether to grant habeas release to ICE detainees. *See Dada, et al. v. Witte, et al.*, 1:20-CV-458, ECF No. 17 at 22-23. Specifically, the Court considered:

> (1) whether the petitioner has been diagnosed with COVID-19 or is experiencing symptoms consistent with the disease;
>
> (2) whether the petitioner is among the group of individuals that is at higher risk of contracting COVID-19 as identified by the CDC, due to the petitioner's age or an underlying health condition;
>
> (3) whether the petitioner has been, or has likely been, directly exposed to COVID-19;
>
> (4) the physical space in which the petitioner is detained, and how that physical space affects his risk of contracting COVID-19;
>
> (5) the efforts that detention facility officials have made to prevent or mitigate the spread of, or harm caused by, COVID-19;
>
> (6) any danger to the community, or to the petitioner's immigration proceedings, that may be posed by the petitioner's release; and
>
> (7) any other relevant factors.

*See id.*

Dilys has not been diagnosed with COVID-19, and he is not experiencing any symptoms of the virus. He does not allege that he has been directly exposed to the virus.

Dilys alleges that he is 40 years old (ECF No. 1 at 4), but Respondents maintain he is actually 32 (ECF No. 11-1 at 7). Regardless, Dilys is not at an age that automatically puts him at higher risk according to the CDC.

Dilys contends he is at increased risk for severe illness from COVID-19 strictly because he is a smoker and has a 16-year history of smoking.

According to the CDC, COVID-19 is a new disease and there is limited information regarding risk factors for severe disease. Based on currently available information and clinical expertise, older adults and people of any age who have certain underlying medical conditions might be at higher risk for severe illness from COVID-19.[2] Dilys does not allege that he suffers from any serious underlying medical conditions. In fact, Dilys does not allege that he has any medical conditions whatsoever.

The CDC states that, among adults, the risk for severe illness from COVID-19 increases with age, with older adults at highest risk.[3]

---

[2] *See People Who Are at Increased Risk for Severe Illness,* Center for Disease Control, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited July 13, 2020).

[3] *See Older Adults,* Center for Disease Control, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited July 13, 2020).

Additionally, the CDC reports that:

People of any age with the following conditions are at increased risk of severe illness from COVID-19:

- Chronic kidney disease
- COPD (chronic obstructive pulmonary disease)
- Immunocompromised state (weakened immune system) from solid organ transplant
- Obesity (body mass index [BMI] of 30 or higher)
- Serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies
- Sickle cell disease
- Type 2 diabetes mellitus[4]

Dilys presents no medical evidence establishing that he is immunocompromised or suffers from any conditions that would cause him to be at increased risk.

Dilys alleges that the World Health Organization ("WHO") also identifies individuals who smoke to be at higher risk for severe illness. According to the page Dilys cites, "tobacco smokers (cigarettes, waterpipes, bidis, cigars, heated tobacco products) may be more vulnerable to contracting COVID-19, as the act of smoking involves contact of fingers (and possibly contaminated cigarettes) with the lips, which increases the possibility of transmission of viruses from hand to mouth."[5] However, the WHO also notes that "there are no peer-reviewed studies that have evaluated the risk of SARS-CoV-2 infection associated with smoking." *Id.*

---

[4] *See People of Any Age with Underlying Medical Conditions*, Center for Disease Control, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 13, 2020).

[5] https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/q-a-on-smoking-and-covid-19#:~:text=Smokers%20are%20likely%20to%20be,communal%20and%20social%20settings (last visited July 13, 2020).

Dilys does not allege that he has any underlying or uncontrolled medical conditions. He does not have chronic lung disease or moderate to severe asthma, diabetes, liver disease, or a serious heart condition. Dilys is not undergoing dialysis, and he does not have kidney disease. He is not obese. Dilys presents no medical evidence substantiating his claim that he has smoked for 16 years. There is no personal medical documentation indicating that Dilys is actually immunocompromised, and the Court declines to draw that inference.

Dilys's only alleged risk factor is his history of smoking. Dilys has pointed to no case—and the Court has found none—in which any court in this country determined that a history of smoking, alone, warranted release due to COVID-19. *See e.g., Wilson v. Williams*, 4:20-CV-00794, 2020 WL 1940882, at *6 (N.D. Ohio Apr. 22, 2020) (excluding from subclass definition those whose only risk factor is a history of smoking, "given the difficulty of documenting such occurrence and identifying those individuals through BOP records alone"), *injunction vacated*, 20-3447, 2020 WL 3056217 (6th Cir. 2020). Without any medical evidence to support Dilys's claim that he is at a higher risk for severe illness from COVID-19, Dilys is unlikely to succeed on the merits of his claim.

Dilys also alleges that Respondents have failed to properly isolate and contain COVID-19 within CCC; continue to accept new detainees; have no policy to test incoming detainees; do not mandate or provide adequate medical screenings for all detainees; and, have failed to institute policies that would properly protect him from contracting COVID19. ECF No. 1 at 13.

According to Respondents, CCC has provided education to detainees; provided 2 masks to all detainees; provided gloves and masks or face shields to staff; provided soap to all detainees; tripled its cleaning supplies and increased the frequency of cleanings; reduced capacity to less than 75%; and limited or suspended visitation. ECF No. 11 at 12-13; 11-1 at 2-6. Vital Oxide RTU is sprayed in the dorm every 12 hours. ECF No. 11-1 at 5. Phones and tablets are cleaned before and after each use. *See id.* Detainees also have access to antibacterial soap and cleaner. ECF No. 11-2 at 5. Detainees who present symptoms are placed in isolation and tested. ECF No. 11 at 13. New detainee-intakes are screened and "cohorted" and kept separate from other detainees for 14 days. ECF No. 11 at 14; 11-1 at 6. ICE continues to update protocols to remain consistent with CDC guidance. ECF No. 11-1 at 2-3.

Thus, Dilys cannot show that Respondents' efforts to prevent or mitigate the spread of, or harm caused by, COVID-19, have been wholly subpar. At a bare minimum, the evidence conflicts. And standing alone, this conflicting evidence does not warrant Dilys's release.

As of May 21, 2020, CCC had 36 confirmed COVID-19 cases and one suspected case. ECF Nos. 13, 13-1. According to ICE's website, there are currently 56 positive cases.[6] Despite the alleged deficiencies in Respondents' approach to containment, Dilys does not allege that he has been directly exposed to the coronavirus. Moreover, since his Petition (ECF No. 1) was filed, Dilys has remained in good health according to the record before the Court.

---

[6] https://www.ice.gov/coronavirus (last visited July 13, 2020).

11

Thus, on balance, Dilys cannot show that his detention is unconstitutional due to COVID-19 concerns.

### III. Conclusion

Because Dilys cannot show that he is entitled to a preliminary injunction, IT IS RECOMMENDED that the request for emergency injunctive relief contained in the "Petition for Writ of Habeas Corpus and Complaint for Emergency Injunctive Relief" (ECF No. 1) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), any party may serve and file with the Clerk of Court written objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections or reply briefs) may be filed, unless a party shows good cause and obtains leave of court. The District Judge will consider timely objections before issuing a final ruling.

A party's failure to file written objections to the proposed factual findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days after being served with a copy thereof, or within any extension of time granted by the Court under Fed.R.Civ.P. 6(b), shall bar that party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this 13th day of July 2020.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE